**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

v.

**APPROXIMATELY $1,181,089.93 IN U.S.**
**CURRENCY SEIZED FROM BANK OF**
**AMERICA ACCOUNT NO. 229059388826**
**IN THE NAME OF BEST WAY**
**MEDICAL SUPPLIES, INC.,**

       **Defendant *In Rem*.**

_____/

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by and through its undersigned counsel, alleges as follows:

### I.  NATURE OF THE ACTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as:

    (i) Approximately $1,181,089.93 in U.S. currency seized from Bank of America account number 229059388826 in the name of Best Way Medical Supplies, Inc. (the "Defendant Asset").

### II.  JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345,

1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Asset. *See* 28 U.S.C. §§ 1345, 1355(b).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant Asset was brought upon seizure. *See* 28 U.S.C. §§ 1355(b)(1), 1395; 18 U.S.C. § 981(h).

### III. FACTUAL ALLEGATIONS

#### A. The Medicare Program and Durable Medical Equipment

5. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who are 65 years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations.

6. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

7. Individuals who received benefits under Medicare were commonly referred to as "Medicare beneficiaries."

8. Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

9. Medicare was subdivided into multiple program "parts."

10. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

11. DME was equipment designed for repeated use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, back braces, knee braces, wheelchairs, nebulizers,

and oxygen concentrators.

12. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the enrolled provider a Medicare "provider number."

13. A provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

14. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

15. To receive payment from Medicare, providers, including DME companies, submitted or caused the submission of claims to Medicare, either directly or through a billing company.

16. A Medicare claim for DME reimbursement was required to set forth, among other things, the name and unique Medicare identification number of the beneficiary, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

17. A claim for DME submitted to Medicare qualified for reimbursement only if the equipment was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

### B. Best Way Medical Supplies, Inc.

18. Best Way Medical Supplies, Inc. ("Best Way") was an enrolled Medicare provider that purportedly provided DME to Medicare beneficiaries.

19. Best Way was a Florida corporation located in Hialeah, Florida, which is within the Southern District of Florida.

20. Best Way's Bank of America account number 229059388826 ("BoA account") was opened on or about December 28, 2021, using an address at Best Way's purported office in Hialeah, Florida.

21. Co-conspirators submitted and caused Best Way to submit false and fraudulent claims to Medicare totaling approximately $3,731,804 in U.S. currency for DME that was medically unnecessary and not provided as represented.

22. Alleged beneficiaries of Best Way's Medicare claims stated in interviews with law enforcement agents that they did not receive, request, or need any of the DME that was billed for them and had never heard of Best Way.

23. Alleged providers and prescribers of the DME identified in Best Way's Medicare claims stated in interviews with law enforcement agents that they had never heard of Best Way, and they had not prescribed the DME to the identified beneficiaries. Some of these providers stated that the identified Medicare beneficiaries were not their patients. These providers' prescriptions accounted for approximately 90% of Best Way's total billed Medicare claims.

24. On or about September 19, 2022, law enforcement agents also visited Best Way's purported office in Hialeah, Florida, which they found was closed. There were no signs indicating Best Way was an active business.

    C.  **<u>Defendant Asset</u>**

25. From in or around December 2021 through on or about May 17, 2022, as a result of claims for reimbursements, Medicare deposited approximately $2,198,473.93 in U.S. currency into Best Way's BoA account. This approximately $2,198,473.93 in U.S. currency constituted approximately 99% of the BoA account's total deposits during that time period.

26. Based on an analysis in or around September 2022 of the BoA account, approximately $1,181,089.93 in U.S. currency, which was entire balance of the account at the time, was traceable to Medicare reimbursements.

27. On or about September 30, 2022, law enforcement agents served a federal seizure warrant on Bank of America for the balance of the BoA account.  *See* Case No. 22-MJ-03654-EGT (S.D. Fla.).

28. Pursuant to that seizure warrant, Bank of America disbursed approximately $1,181,089.93 in U.S. currency from Best Way's BoA account via a cashier's check issued to the Federal Bureau of Investigation ("FBI").

29. The approximately $1,181,089.93 in U.S. currency, which constitute Defendant Asset, was seized by the FBI.

**IV.**    **BASIS FOR FORFEITURE**

30. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a specified unlawful activity or a conspiracy to commit such offense is subject to civil forfeiture.

31. Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting an offense involving a "Federal health care offense" constitutes a specified unlawful activity.

32. Pursuant to 18 U.S.C. §§ 1347 and 1349, health care fraud and conspiracy to

5

commit health care fraud each is a "Federal health care offense."

## FIRST CLAIM
### Proceeds of Conspiracy to Commit Health Care Fraud
### 18 U.S.C. § 981(a)(1)(C)

33. The factual allegations in paragraphs 1 through 29 are re-alleged and incorporated by reference as if fully set forth herein.

34. As set forth above, the Defendant Asset is property that constitutes or is derived from proceeds traceable to a conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

35. Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM
### Proceeds of Health Care Fraud
### 18 U.S.C. § 981(a)(1)(C)

36. The factual allegations in paragraphs 1 through 29 are re-alleged and incorporated by reference as if fully set forth herein.

37. As set forth above, the Defendant Asset is property that constitutes or is derived from proceeds traceable to health care fraud in violation of 18 U.S.C. § 1347, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

38. Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest *in rem* of the Defendant Asset; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Asset; that the Defendant Asset be forfeited and condemned to the United States of America; and for such

other and further relief as may be deemed just, necessary and proper.

                                      Respectfully submitted,

                                      MARKENZY LAPOINTE
                                      UNITED STATES ATTORNEY

By:   *s/G. Raemy Charest-Turken*
        Gabrielle Raemy Charest-Turken (Fla. Bar # 15939)
        Assistant United States Attorney
        E-mail: Gabrielle.Charest-Turken@usdoj.gov
        99 N.E. 4th Street, Suite 700
        Miami, Florida 33132
        Phone: (305) 961-9365

## **VERIFICATION**

I, Joseph Slaughterbeck, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the Federal Bureau of Investigation ("FBI") and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of the FBI.

Executed on this ___17___ of ___April___ 2023.

_____
Joseph Slaughterbeck
Special Agent, Federal Bureau of Investigation